# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MARY JANE SMITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 7:13-CV-408 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Mary Jane Smith ("Smith") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Smith alleges that the Administrative Law Judge ("ALJ") erred by failing to give proper weight to the opinion of her treating psychologist, and by failing to properly consider the cumulative effect of her physical and mental impairments. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I hereby **DENY** Smith's Motion for Summary Judgment (Dkt. No. 13), and **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Smith failed to demonstrate that she was disabled

---

[1] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636 (c)(1).

under the Act.[2]  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).  The final decision of the Commissioner will be affirmed where substantial evidence supports the decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Smith filed for SSI and DIB on July 14, 2010, claiming that her disability began on July 14, 2010. R. 193–206.  The Commissioner denied Smith's application at the initial and reconsideration levels of administrative review. R. 81–82, 106–107.  On July 3, 2012, ALJ Thomas W. Erwin held a hearing to consider Smith's claims. R. 35–60.  Smith was represented by an attorney at the hearing, which included testimony from Smith and vocational expert James Williams. R. 35–60.

On July 17, 2012, the ALJ entered his decision analyzing Smith's claim under the familiar five-step process[3] and denying her claim for benefits.  R. 19–29.  The ALJ found that

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Smith suffered from the severe impairments of depression, anxiety, panic disorder, arthralgias, back disorder and headaches. R. 21. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22–23. The ALJ found that Smith retained the RFC to perform a range of light work, with the ability to frequently climb ramps and stairs, balance and crouch, and only occasionally stoop, kneel or crawl. R. 23. The ALJ further found that Smith should avoid all hazards, unprotected heights, dangerous machinery, excessive noise and vibrations. He determined that Smith cannot perform complex tasks or skilled work, and needs a low stress job with occasional decision making or changes in the work setting, and no more than occasional interaction with the public. R. 23. Based upon the limitations set forth in the RFC, the ALJ determined that Smith could not return to her past relevant work as a fast food worker (R. 56), but that she could work at jobs that exist in significant numbers in the national economy, such as laundry folder, stock checker and marker. R. 28. Thus, the ALJ concluded that Smith was not disabled. R. 28. On August 2, 2013, the Appeals Council denied Smith's request for review (R. 1–3) and this appeal followed.

## ANALYSIS

Smith generally asserts that the ALJ's decision is not supported by substantial evidence. Specifically, Smith claims that the ALJ "failed to probe the significance of [her] non-exertional impairments," erroneously dismissed the conclusions of her treating psychologist, and failed to analyze the cumulative effect of all of Smith's medical problems. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision on each ground.

### Treating Psychologist Opinions

Smith was has a limited education, and previously worked as a fast food worker and motel housekeeper. R. 40–45. Smith lives by herself, does not drive, and shops occasionally.

3

R. 44–45. Smith suffers from multiple mental impairments, including depression, anxiety and panic attacks.[4] Smith alleges that these mental impairments rendered her disabled as of July 14, 2010.

On September 24, 2010, Angelia Berry, Psy.D., evaluated Smith at the request of the state agency. R. 327–30. Smith reported anxiety and depression but denied mental health treatment for the past two years. R. 328. Dr. Berry diagnosed Smith with major depressive disorder, generalized anxiety disorder, and panic disorder. Dr. Berry assessed Smith's GAF[5] at 62. Dr. Berry found that Smith was capable of understanding simple and complex directions. Dr. Berry further found that Smith had a mildly impaired ability to respond appropriately to others, and a mild to moderate impairment in coping effectively with daily stressors. R. 330. Dr. Berry assessed Smith's prognosis as "fair," with better outcomes expected with participation in mental health treatment. R. 330.

On October 26, 2010, state agency psychologist Joseph Leizer, Ph.D., reviewed the record and determined that Smith retained the mental capacity to perform all levels of work. Dr. Leizer noted that Smith has a history of anxiety and depression, without evidence of inpatient or outpatient treatment, aside from medications. He assessed Smith with mild difficulties in maintaining social functioning and concentration, persistence and pace. R. 64–65.

In November 2010, Smith began treating with Robert W. Smith, Ph.D., at the Brock Hughes Free Clinic. R. 527. At her initial visit, Smith reported increased anxiety after she stopped taking Xanax, and migraine headaches. Dr. Smith recommended treating her migraines

---

[4] Smith's appeal relates exclusively to her mental impairments, and counsel for Smith confirmed at the hearing before this Court that Smith's physical capacity is not at issue in this appeal.

[5] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health illness." Diagnostic and Statistical manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994) ("DSM IV"). A score of 61–70 suggests mild symptoms or difficulty in social or occupational functioning. Id.

with medication and biweekly sessions to focus on self-confidence and interpersonal relationship skills. R. 527. Smith followed up with Dr. Smith approximately once a month from November 2010 through March 2011. R. 503, 504, 505, 506, 525, 527. During those visits, Smith complained of migraine headaches, stress and anxiety. Dr. Smith noted that Smith's affect was flattened (January 25, 2011), and that she "appeared to be 30 years older than her chronological age" (March 10, 2011). On February 22, 2011, Smith reported that she dealt with stress by "exercising and getting out." R. 503. Dr. Smith recommended that Smith keep current on her medications, maintain a support system, meditate and focus on doing good for others. R. 503.

On March 22, 2011, Dr. Smith completed an assessment of Smith's ability to do work-related activities. R. 482–83. Dr. Smith checked boxes indicating that Smith had good ability to relate to co-workers and deal with the public; fair ability to follow work rules, use judgment, interact with supervisors, and function independently; and poor to no ability to deal with stress and maintain attention and concentration R. 483. He noted that Smith had significant problems with coping and inattention. R. 482. Dr. Smith also indicated that Smith had good ability to understand, remember and carry out simple instructions, but no ability to understand, remember and carry out complex instructions. R. 483. Dr. Smith further found that Smith had poor to no ability to relate predictably in social situations, but fair ability to behave in an emotionally stable manner, and good ability to maintain her personal appearance. R. 483.

On June 21, 2011, Smith visited Dr. Smith after being incarcerated for over a month on drug-related charges. R. 497 In November 2011, Smith returned to Dr. Smith, complaining of sleeplessness (R. 495), and on December 8, 2011, Smith reported feeling anxious and depressed. Dr. Smith found that her mood, affect and thought processes were within normal limits and

assessed Smith with a GAF[6] at 60. R. 489. On January 24, 2012, Smith reported to Dr. Smith that her father recently passed away and she was struggling with grief issues and relationship problems among her family members. R. 487. Dr. Smith noted that Smith appeared only slightly depressed, was alert and oriented and had intact thought processes. Dr. Smith also noted that Smith had a good response to therapy. R. 487.

On June 29, 2012, Dr. Smith completed a second assessment of Smith's ability to do work related activities. R. 681–82. As before, Dr. Smith found that Smith had good ability to relate to co-workers and the public; fair ability to follow work rules, use judgment, interact with supervisors, function independently, and maintain attention and concentration; and poor to no ability to deal with work stress. R. 681. Dr. Smith found that Smith had fair ability to understand complex and detailed job instructions, and very good ability to understand and carry out simple job instructions. R. 682. Dr. Smith noted that Smith had below average social, financial and cognitive skills. R. 681.

The ALJ considered the opinions of Dr. Smith, and gave them little weight because they are checkbox forms, and are not supported by Dr. Smith's treatment records. R. 25. The ALJ gave great weight to the opinion of Dr. Berry, finding it consistent with Smith's objective medical records and the record as a whole. R. 25. Smith argues that the ALJ erred by giving only little weight to the opinions of Dr. Smith.

A treating physician's opinion is not automatically entitled to controlling weight. Treating physicians' opinions are given controlling weight only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion.

---

[6] A score of 51–60 suggests moderate symptoms or difficulty in social or occupational functioning. Id.

20 C.F.R. § 404.1527(c)(2); Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

  Here, the ALJ considered Dr. Smith's opinions regarding Smith's mental capacity, and found that they were entitled to little weight as checkbox forms, and were inconsistent with his own treatment notes and the record as a whole. R. 25. "[C]heck-the-box assessments without explanatory comments are not entitled to great weight, even when completed by a treating physician." Leonard v. Astrue, No. 2:11cv0048, 2012 WL 4404508, at *4 (W.D. Va. Sept. 25, 2012) (citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993)). Dr. Smith's opinions contain little to no elaboration on the form boxes he checked.

  Additionally, Dr. Smith's assessments are contradicted by his treatment notes, and are contrary to the other psychological assessments of Smith in the record. During Smith's psychotherapy sessions with Dr. Smith, he consistently assessed her GAF score as 60 or higher, which indicates mild to moderate symptom severity. R. 487–89, 497, 499. Dr. Smith routinely assessed Smith with mild to moderate mental symptoms, and found that she responded well to mental health therapy. R. 487–89, 497, 499. Consistent with those findings, Dr. Smith treated

7

Case 7:13-cv-00408-RSB   Document 24   Filed 03/25/15   Page 7 of 11   Pageid#: 748

Smith solely with medications and therapy sessions. Likewise, Drs. Leizer and Berry both found that Smith suffered only mild to moderate symptoms from her mental impairments. R. 64–5, 330.

Further, although the ALJ gave little weight to Dr. Smith's assessments, the ALJ developed an RFC with significant restrictions to account for Dr. Smith's concerns. The ALJ limited Smith to work involving only simple, routine, repetitive unskilled tasks; low stress with no more than occasional decision-making or changes in setting; and no more than occasional interaction with the public. R. 23.

Overall, Smith received occasional, conservative mental health treatment. Although the records document that Smith suffers from anxiety and depression, they further reflect that she suffers only mild to moderate limitations as a result of those mental impairments. Drs. Berry and Leizer concluded that, despite Smith's moderate limitations, she is capable of meeting the basic mental demands of unskilled, simple, routine, repetitive, low stress work. R. 64–65, 327–30. The ALJ considered all of the opinions set forth above, along with the records as a whole, and accounted for Smith's mental impairments by creating a restricted RFC. The ALJ explained the mental restrictions contained in the RFC, and even crafted a slightly more restricted RFC than suggested by the limitations from the state agency physicians. I find that the ALJ fulfilled his obligation to explain how Smith's mild to moderate mental limitations translate into an RFC for avoiding complex or skilled work and needing a low stress job. See Mascio v. Colvin, No. 13-2088, 2015 WL 1219530 (4th Cir. Mar. 18, 2015). Accordingly, I find that substantial evidence supports the ALJ's decision to give little weight to Dr. Smith's opinions.

### Cumulative Effect of Impairments

Smith also claims that the ALJ failed to analyze the cumulative effect of all of her medical problems. Pl. Br. Summ. J. 8. I find that the ALJ properly considered the combined effects of Smith's impairments, both mental and physical.

Where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Id. at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir. 1985)). "[A]n ALJ need not explicitly state that he or she has considered a claimant's impairments in combination. What matters is whether it is discernible from the ALJ's decision that he or she did so." Jones v. Astrue, No. 7:10cv00313, 2011 WL 1877677, at *12 (W.D. Va. May 17, 2011).

Here, the ALJ explicitly found in his opinion that Smith did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15. Furthermore, the ALJ's written opinion reveals that he thoroughly considered all of the evidence relating to Smith's alleged physical and mental impairments when developing an RFC and finding Smith not disabled. Indeed, the ALJ incorporated both exertional and nonexertional limitations in Smith's RFC (R. 23) and the ALJ's hypothetical questions to the vocational expert addressed all of these limitations. R. 55–59. It is apparent from the RFC itself that the ALJ accounted for the cumulative impact of Smith's impairments as supported in the

9

record, providing restrictions that are both mental (e.g. "no more than occasional interaction with the public") and physical (e.g. "no more than occasionally stop, kneel, or crawl"). R. 23. Smith fails to state with any degree of precision how the restrictions provided for in the RFC neglect to address any combined impact of Smith's mental and physical impairments. Therefore, I find that the ALJ did not fail to analyze the combined effect of Smith's medical problems.

### **Failure to Develop the Evidence**

Smith argues in her brief that the ALJ "failed to probe" the significance of her non-exertional impairments and all relevant facts. Pl. Br. Summ. J. p. 7. Counsel for Smith clarified at the hearing before this Court that she believes the Commissioner should have further developed the record and obtained a consultative medical opinion to resolve the conflict between the opinions of Drs. Berry and Smith.

The ALJ has an affirmative duty to further develop the medical record, "when the evidence is inadequate" to make a disability determination. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Where the ALJ "ha[s] before him sufficient facts to determine the central issue of disability," no such requirement exists. Scarberry v. Chater, No.94-2000, 1995 WL 238558, *4, n. 13 (4th Cir. Apr. 25, 1995). The ALJ is not required to obtain an additional consultative opinion simply because those before him differ. Rather, a consultative examination must be ordered "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009)(citing 20 C.F.R. §§ 404.1519a(b), 416.919a(b) (2008)).

Here, the evidence before the ALJ included multiple medical opinions in the record with regard to Smith's functional capacity, which was adequate evidence for the ALJ to determine whether Smith was disabled. See Baldwin v. Colvin, No. 2:12CV76-RLV, 2014 WL 3939213, at

10

*2 (W.D.N.C. Aug. 12, 2014). Further, Smith was represented by counsel at the hearing (R. 35–60), there was no suggestion made at the hearing concerning a need to withhold a disability determination pending a further development of the record, and there has been no identification of any specific evidence concerning her medical condition which would suggest a different disability determination by the ALJ. These failures are fatal to Smith's argument that the ALJ violated his duty to develop the record. See Root v. Colvin, 5:12CV00103, 2013 WL 6633081 (W.D. Va. Dec. 17, 2013); Newton v. Apfel, 209 F.3d d 448, 458 (5th Cir. 2000) (claimant has burden to show that additional evidence would have been produced that might have led to a different decision) (cited with approval in Camp v. Massanari, 22 Fed. Appx. 311 (4th Cir. 2001). An attorney may not later attack the ALJ for failing to investigate further when the attorney approved of the record. Baldwin, 2014 WL 3939213, at *2 (citing Hardy v. Astrue, No. 11-299, 2013 WL 66082, at *7 (W.D.N.C. Jan. 4, 2013)). Thus, the ALJ was not required to order a consultative examination or further develop the record in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied, Defendant's Motion for Summary Judgment will be granted, and this action will be dismissed and stricken from the active docket of the Court.

Enter: March 25, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge